Adam Dolce, Esq – SBN 310112
adam@dolcelegal.com
**LAW OFFICE OF ADAM DOLCE**
414 Yale Avenue, Suite B
Claremont, CA 91711
Telephone: (909) 542-9030
Fax: (909) 992-3554

Attorney for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGENDARY TRANSPORT, LLC; and Rō FITNESS, LLC; for themselves and for others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A; and DOES 1 to 10, Inclusive,<br><br>Defendants. | **Case No. 2:20-cv-03636 ODW(JCx)**<br><br>BEFORE: Hon Otis D. Wright II<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. Violations of 15 USC § 1 (Sherman)<br>2. Violations of 15 USC. § 2 (Sherman)<br>3. Violations of 15 U.S.C. § 15 (Clayton)<br>4. Negligence<br>5. Intentional Misrepresentation<br>6. Negligent Misrepresentation<br>7. Declaratory Relief (28 USC § 2201)<br>8. Injunctive Relief (Sherman/Clayton)<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed: April 20, 2020 |

Plaintiffs LEGENDARY TRANSPORT, LLC ("Legendary") and

Rō FITNESS, LLC, for themselves and on behalf of a class of similarly situated

persons or entities, hereby complains against the Defendants as follows:

## INTRODUCTION

1. As has now been seen on a global scale, the COVID-19 pandemic has fundamentally altered the economic and societal landscape on which it arrived.

2. In part motivated by the effect this pandemic was having on the thirty million small businesses operating across the country, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act on March 27, 2020 ("CARES Act").

3. Under the CARES Act, which was in essence a $2 trillion stimulus bill, the United States authorized SBA-approved lenders to immediately begin administering loans under what is now known as the Paycheck Protection Program ("PPP"). Guidelines were published both by the Treasury Department and the Small Business Administration (SBA) on or around April 2, 2020 (implementing § 1102 of the CARES Act, which amended 15 U.S.C. § 636(a) [the Small Business Act]).

4. As part of the PPP, SBA-approved lending institutions were authorized to loan up to 2.5 times a small business's monthly payroll and related costs subject to very limited requirements and certifications.

5. Loans [to be] provided under the PPP were "100 percent guaranteed by the SBA," and were further anchored by a provision in the CARES Act that

(¶ 5 cont'd)

called for forgivability of the same loan amounts so long as the recipient of each loan used the proceeds consistent with the purpose of the PPP (specifically, for "payroll"-related costs).

6. Distribution of these loans was supposed to be quick and efficient, reflecting the exigency facing small businesses in light of the national emergency and state-based shelter-in-place orders.

7. In fact, many of the prior SBA-requirements applicable to business loans were waived for purposes of the PPP (such as the "credit elsewhere"-test).

8. The general requirements to receive a loan under the PPP instead required the applicant:

   a. Be a small business as contemplated by the CARES Act (or a business exempt from such definitions);

   b. Have been in operation as of February 15, 2020;

   c. Had employees who received salaries and payroll taxes, or independent contractors; and

   d. Make certifications "in good faith" as to the necessity of the loan due to "uncertainty"; that the funds will be used for "payroll costs"; and that the applicant is only making one loan request.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

3
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

9. For purposes of underwriting these loans, SBA-approved lenders were required to confirm receipt of the applicant's certifications, the information the applicant submitted corroborating its payroll costs, and to confirm the dollar amount being sought to calculate the loan amount (2.5x monthly payroll costs).

10. In addition, sole proprietors or self-employed individuals were also able to receive a loan under the PPP to cover their own payroll and payroll-related costs.

11. In other words, and with very limited exception, most small businesses in the United States would likely believe themselves to be qualified to receive a loan under the PPP given the uncertainty COVID-19 brought upon the business community at large.

12. For this expected demand, Congress initially earmarked $349 billion to fund the PPP. Practically-speaking, the PPP would have the effect of giving a mostly risk-free boost to small businesses across the country solely so they could survive the economic fallout that COVID-19 brought.[1]

13. The CARES Act made no declaration as to priority of business by industry, or that SBA-approved lenders could make loans to preferred industries or

---

[1] To the extent any applicant that received a loan could apply for loan forgiveness for the amounts used in the immediate two month-period following the loan distribution/reception-date. Because the maximum loan amount for any small business was 2.5 its monthly payroll costs, theoretically the most a small business would have to repay after loan forgiveness would be 1/5 the total loan amount.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

(¶ 13 cont'd)

businesses above other industries or businesses.

14. To the contrary, the SBA contemplated SBA-approved lenders making loans under the PPP to both existing and new customers.

15. The PPP then started on April 3, 2020, which is when SBA-approved lending institutions could begin accepting applications pursuant to Treasury Guidelines.

16. As of April 16, 2020, 4,975 SBA-approved lending institutions approved 1.66 million loan applications under the PPP.

17. A majority of these SBA-approved lenders limited the processing of such applications to their existing customers only. Of the major banks in the United States – Bank of America, Chase Bank, Wells Fargo, Citibank, PNC Bank, TD Bank, to name a few – all limited the processing of loan applications under the PPP to their own existing customers.

18. The entire amount initially earmarked for the PPP was reportedly exhausted as of April 13, 2020. As of April 16, 2020, approximately 94% of small businesses in the United States found themselves without a share.

19. Spanning this period, from April 3, 2020 to April 16, 2020, two of the most widely-reported issues facing the PPP were that the total amount earmarked by Congress under the CARES Act was available to small businesses on a

(¶ 19 cont'd)

first-come/first-served basis (and was confirmed by the SBA in its Interim Final Rule); and that the "major" banks failed to process applications in a timely manner.

20. On April 24, 2020, and in part because of how the initial round of funding under the PPP was distributed, the Congress approved an additional $310 Billion in funding for small businesses with pending or new loan applications.

21. It is in this context that the Plaintiffs bring the within action for declaratory, injunctive, and monetary relief.

## JURISDICTION & VENUE

22. This Court has jurisdiction over the Defendants and this action pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1337, and 1367; as well as 15 U.S.C. §§ 4 and 15. For purpose of § 1332(d)(2), there are members of the Class who are citizens of states other than the states of citizenship of the Defendants, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00) (exclusive of interest and costs).

23. Venue lies pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 15(a), since the Defendants conduct a continuous course of business in the State of California *and* the Plaintiff, Legendary, transacts some of its business affairs – via its

(¶ 23 cont'd)

transportation clients – in California as well.

## PARTIES

24. The named Plaintiff, Legendary Transport, LLC ("Legendary"), is a small business within the meaning defined by the SBA and the CARES Act, and is owned and operated by the individual, Lindsey Kszos.

25. Legendary is organized under the laws of the state of Florida, though its transportation clients are from across the country and routinely engage in interstate commerce (including in and out of California).

26. In addition, Legendary and Ms. Kszos are business clients of the Chase Defendants and have been for years.

27. The named Plaintiff, Rō FITNESS, LLC, is a small business within the meaning defined by the SBA and the CARES Act, and is co-owned and operated by the individual, Chelsea Moore.

28. Rō FITNESS is organized under the laws of the state of Texas, and is in the business of providing health and wellness services. Like Legendary, Rō FITNESS has been a business client of Chase Bank for years.

29. Defendant JPMorgan Chase Bank, N.A. is a national banking association formed under the laws of the United States. It is the country's largest bank, with an active presence in this district. It operates the entity known as

(¶ 29 cont'd)

"Chase Business Banking," though it remains unclear to Plaintiff whether such a designation is, in fact, a separate legal subsidiary of JPMorgan Chase Bank, N.A.

30. It is believed and alleged other subsidiaries operating under JPMorgan Chase Bank, N.A., and may have been involved in the acts/omissions to follow. As a result, and because the Plaintiff is unaware of the particular types of subsidiaries that may have had such a role, Plaintiff sues such additional defendants in a fictitious capacity identified as DOES 1 through 2 (collectively, "Chase Bank" or "Chase Defendants"). Plaintiff will seek leave to amend her complaint/caption when such actual names are learned.

31. It is now reported that the Chase Defendants gave preferential treatment to certain clients – described as "private banking"-clients or "commercial"-clients – over other of its small business-clients (the last of which are known as "retail clients" of the Chase Defendants). Certain of these preferred clients are therefore being sued in a fictitious capacity identified as DOES 3 through 10. Plaintiff will seek leave to amend her complaint/caption when such actual names are learned.

///

# FACTS

32. After the CARES Act was signed into law, the Chase Defendants began to prepare for the likely influx of applications they would receive from those small businesses/ persons seeking immediate relief under the PPP.

## Retail Clients

33. On March 31, 2020, for instance, Chase Bank issued an email to most, if not all of its retail clients – which it's believed included smaller businesses, like the Plaintiffs – advising them on the details of the PPP and what they would require from them in order to be considered. An accurate copy of this March 31, 2020-email is attached hereto as **Exhibit 1**.

34. Exhibit 1 contained a specific representation from Chase Bank that the PPP-application would only be available "online" and would not be "available by phone or [in person]."

35. Exhibit 1 further advised the Chase Defendants' retail clients to prepare for when the Chase Defendants would make the application available online, and further identified the specific information they would require in order to process the same application.

36. On April 1, 2020, Chase Bank then issued another email to most, if not all of its retail clients – which it's believed included the Plaintiffs – advising them Chase Bank would be hosting a "webinar" on information relating to the

**LAW OFFICE OF**
**ADAM DOLCE**
ATTORNEY AT LAW

(¶ 36 cont'd)

PPP. An accurate copy of that email is attached hereto as **Exhibit 2**.

37. On April 2, 2020, Chase Bank then issued another email to most, if not all of its retail clients – which it's believed included the Plaintiffs – advising them that Chase Bank would specifically announce when they would start accepting applications. An accurate copy of this email is attached hereto as **Exhibit 3**.

38. According to Exhibit 3, Chase Bank made the following representations and assurances to its retail clients:

    a. "***Make no mistake*** – we will help you, our customer, with getting access to these emergency funds. And we will make it as easy as possible for you to get these funds quickly."

    b. "We will announce when we can start accepting applications in several ways: 1. We will send an email to all customers for whom we have an email. 2. We will tweet at @ChaseforBusiness and @Chase. 3. We will update our website chase.com/cares in real time."

    c. "All applications must be made online through this digital form."

39. Worth noting, Chase Bank's "twitter handles" – for itself and for its business/retail clients – are @Chase and @ChaseforBiz (*not* @ChaseforBusiness).

**LAW OFFICE OF ADAM DOLCE**
ATTORNEY AT LAW

40. In this same email, Chase Bank did advise its retail clients – including the Plaintiffs – that it expected a delay to the application-open date of April 3, 2020 as a result of it "awaiting guidance from the SBA and the U.S. Treasury."

41. At some point on or around April 2, 2020 or April 3, 2020, the SBA and the Treasury Department published their Interim Final Rule/Guidelines regarding loan applications under the PPP.

42. Said Interim Final Rule confirmed the PPP was to be administered on a "first-come, first-served" basis. In addition, an applicant for a loan under the PPP could only make one loan request, and would have to certify to that fact.

43. On April 3, 2020, several SBA-approved lending institutions began accepting applications from borrowers seeking PPP-related loans.

44. As will be important for the causes to follow, most major SBA-approved lenders – including the Chase Defendants –required putative borrowers to be existing clientele for purposes of applying for a loan under the PPP.

45. Neither the CARES Act nor the PPP required that borrowers make applications with their specific lending institutions, which means such a limitation was instituted by the SBA-approved lenders themselves.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

11
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

46. By April 5, 2020, Chase Bank had failed to announce to its retail clients via electronic correspondence or through its twitter handles that it was accepting applications under the PPP.

47. However, Chase Bank had begun accepting "inquiries" that its retail clients – which included the Plaintiffs – could submit for purposes of a future application for a loan under the PPP.

48. By April 5, 2020, or two days after Chase Bank had begun accepting these *inquiries*, it had still failed to announce that same information to its retail clients via electronic correspondence or through its twitter handles.

49. In other words, a typical small business, what Chase Bank deemed a 'retail client," would quite literally need to be on Chase Bank's website to know the inquiry-portal had been opened as of April 3, 2020. An accurate copy of what the online inquiry-form actually looked like on April 3, 2020 is attached hereto as **Exhibit 4**.

50. At the bottom of Exhibit 4, in miniscule print, Chase Bank included some additional language seeking to limit its liability to its retail clients. In relevant part, this language included the following phrases:

   a. "Chase anticipates high volume and there may be processing delays and system failures along with other issues that interfere with Chase taking your application or submission of any application to SBA."

b. "Chase does not represent or guarantee that it will take your application or submit any applications taken before SBA funding is no longer available or at all."

c. "By using Chase to seek a [PPP] loan, you agree that Chase is not responsible or liable to you

   i. If your application is not taken by Chase or any application is not submitted to the SBA until after SBA stops approving applications, for any reason or

   ii. If your inquiry or any application is not processed."

d. "You also forever release and waive any claims against Chase concerning failure to obtain a loan. This release and waiver applies to but is not limited to [sic] any claims concerning Chase's

   i. Pace, manner or systems for processing or prioritizing your inquiry or any resulting applications, or

   ii. Representations by Chases [sic] regarding the application process, the [PPP], or availability of funding."

51. After a retail client would submit one of these inquiries as found at Exhibit 4, Chase Bank would confirm receipt of the inquiry in two ways.

52. First, a "Thank You"-screen would load following submission of the inquiry (an accurate copy of this screen is attached hereto as **Exhibit 5**).

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

13
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

53. Second, Chase Bank would send another form email acknowledging receipt of the inquiry (an accurate copy of this form email, dated April 5, 2020 and which most, if not all retail clients would have received as part of the inquiry-process, is attached hereto as **Exhibit 6**).

54. According to Exhibit 5, Chase Bank specifically represented to its retail clients that it was "unable to accept any application from [them] until [Chase Bank] contact[ed] [them]."

55. According to Exhibit 6, Chase Bank advised its retail clients that they could expect to receive "either: an email asking you to go online to complete your application or a call to complete your application over the phone."

56. This email also specifically advised its retail clients that Chase Bank's call center/branch personnel would not answer questions relating to the PPP.

57. Chase Bank's application portal – for retail clients to finally and formally apply for a loan under the PPP – finally went live sometime on or around April 6, 2020.

58. Leading up to and including April 6, 2020, however, Chase Bank did not send an email to its retail clients nor did it tweet the information out via its twitter handles to its retail clients. It also failed to call those retail clients that had submitted an inquiry as contemplated by Exhibit 6.

59. More specifically, and as will be consistent with most retail clients of Chase Bank, neither Plaintiff received an email prior to April 10, 2020 advising either that they could begin applying to the PPP.

60. Instead, a typical retail client would have had to specifically navigate to Chase Bank's website to know its portal was live and open for accepting applications.

61. On April 7, 2020 – four days after other SBA-approved lending institutions had gone live with their applications, and six days before the funding for the PPP was reportedly exhausted – Chase Bank did send an email to its retail clients that had the wherewithal to submit an "inquiry" as described herein. An accurate copy of this email is attached hereto as **Exhibit 7**.

62. On April 10, 2020, Chase Bank then sent an email to its retail clients that did not have the wherewithal to submit an "inquiry," as described herein, advising them it was accepting applications. An accurate copy of this email is attached hereto as **Exhibit 8**.

### Legendary's Application

63. Due to the delay and contradictory information presented by Chase Bank to many of its retail clients, which included the Plaintiffs, Legendary was unable to timely submit an application with Chase Bank for purposes of the PPP.

64. Because of the restrictions in place by the Defendants as a whole, Legendary was similarly unable to seek a loan under the PPP from any other major lender in a timely manner.

65. Instead, Legendary eventually found "Midwest Regional" – a bank with activity in six states that was accepting applications under the PPP to both existing and new customers.

66. Legendary was only able to submit an application to Midwest Regional on or around April 22, 2020 (in anticipation of Congress' second round of funding). However, Legendary was advised that its submission was a "long shot" since Midwest Regional would process those applications already in its queue over new submissions.

67. As of the filing date of this Complaint, Legendary has not received a loan under the PPP from any SBA-approved lender.

### Rō FITNESS's Application

68. Similarly, Rō FITNESS was also unable to timely submit an application with Chase Bank for purposes of the PPP.

69. On or around April 8, 2020, Rō FITNESS was able to fill-out the application made available by Chase Bank; however, as it submitted its application, an error screen loaded. An example of the kind of error screen Rō FITNESS met is attached hereto as **Exhibit 9**.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

70. As part of this error process, Rō FITNESS was given the option to have Chase Bank contact it as part of the application process (and error).

71. As such, the only application, Rō FITNESS submitted was on April 8, 2020.

72. Rō FITNESS never received such a call back confirming receipt of its application from Chase Bank, or reaching-out to assist it in any way.

73. In the days to follow, and because of the delay created by Chase Bank's contradictory information and submission errors, Rō FITNESS began to lose hope its application would be timely reviewed and process by Chase Bank.

74. As a result, and on or around April 11, 2020, Rō FITNESS was able to find a smaller credit union – serving only the Austin, TX-area – that was accepting applications from new customers (Amplify Credit Union). However, Amplify Credit Union was, prior to the CARES Act, not an SBA-approved lender.

75. By that time, however, funding for purposes of the PPP had nearly run-out (the initial earmark).

76. On April 17, 2020, Chase Bank then sent another form email confirming the SBA had guaranteed all of the funds under the initial earmark made for the PPP via the CARES Act. An accurate copy of this email is attached hereto as **Exhibit 10.**

77. According to Exhibit 10, Chase Bank had represented it had already informed those of its clients that would receive funding under the PPP.

78. Rō FITNESS did not receive funding from Chase Bank, nor did it receive funding from Amplify Credit Union.

79. It is currently unknown which of those retail clients' applications were actually processed and approved by Chase Bank.

80. Chase Bank has publicly represented, however, that they approved approximately 18,000 out of the approx. 350,000 retail clients' applications they received (or 4% of these applications).

81. It is worth noting for purposes to follow that Chase Bank processed and approved three major loans under the PPP by April 7, 2020. Ruth Hospitality Group, which owns and operates Ruth Chris's Steak House, received $20m from Chase Bank; Texas Taco Cabana, L.P, which is owned by restaurant conglomerate Fiesta Restaurant Group, received $10m; and the Potbelly Corporation, which owns the Potbelly's restaurant chain, received $10m.

82. With respect to the Ruth Hospitality Group and Texas Taco Cabana, SEC filings indicate these promissory notes were executed on April 7, 2020 already having received prior SBA-approval.

**Private Banking/Commercial Clients | New York Times Reporting**

83. In the context of the preceding paragraph – or how certain clients could have

(¶ 83 cont'd)

received loan approval on the same date Chase Bank's retail clients were informed to finish their applications – it is now known and alleged by the Plaintiffs that while Chase Bank was simultaneously issuing the emails as found at Exhibits 1 through 8, and despite the error screens received by its retail clients as evidenced by Exhibit 9, Chase Bank was providing "concierge" service to its private banking/commercial clients.

84. This subset of clients is believed to be of more "worth" or "value" than Chase Bank's typical retail client, as a private banking/commercial client is one of higher/extreme wealth.

85. According to reporting by the *New York Times*, as published in an article on April 22, 2020 entitled, "Banks Gave Richest Clients 'Concierge Treatment' for Pandemic Aid," by Emily Flitter and Stacy Cowley, of the 8,500-private banking/commercial clients that Chase Bank led through the PPP-process, nearly all of them were approved for a loan under the PPP.

86. It has since been discovered, and therefore alleged, that Chase Bank provided "concierge"-service to these same clients for purposes of fast-tracking their applications under the PPP.

87. In short, nearly 100% of Chase Bank's private banking/commercial clients received loans under the PPP as compared to 4% of its retail clients.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

88. It is therefore alleged and believed, as one possibility, that Chase Bank submitted applications to the SBA for purposes of their private banking/commercial clients without consideration of the CARES Act' requirement that a loan under the PPP be "necessary […] to support the ongoing operations of the eligible recipient."

89. As another possibility, however, and because Chase Bank enjoys "preferred lender"-status with the SBA – meaning it has "complete authority to make and close loans with a guarantee from the [SBA] without obtaining the prior specific approval of the [SBA]" pursuant to 15 U.S.C. § 636(a)(2) – Plaintiffs allege some, if not all of Chase Bank's private banking/ commercial clients may have very well been approved by Chase Bank without involving the SBA at all.

90. Either way, and simply as a matter of statistical improbability, 8,500 private banking/commercial clients could not all be in such an economic state that a loan under the PPP was "necessary" to support their operations.

91. Plaintiffs further allege, by way of Ruth Hospitality Group and the Potbelly Corporation having announced they will return the loans they received under the PPP – that the return of these loans underscores that Chase Bank would have known these clients did not "need" these loans for ongoing operations.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

20
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

92. Notwithstanding Chase Bank submitting for approval loan applications by private banking/commercial clients that likely didn't "need" them to support their ongoing operations, it is also alleged that Chase Bank processed some of their private banking/commercial clients in an expedited manner over their retail clients based, in part, on the former's pre-existing debt considerations.

93. In other words, and based on those applications it prioritized (e.g., Ruth Hospitality Group), Chase Bank fast-tracked loans to those businesses it wanted to ensure would survive COVID-19.

94. It is also reasonable to conclude, and therefore allege, that Chase Bank would have been in prior communication with those preferred clients for purposes of processing loan applications under the PPP.

95. In fact, the *New York Times* all but confirms Chase Bank was in prior communication with its private banking/commercial clients for purposes of fast-tracking certain applications over others.

96. Therefore, Chase Bank's private banking/commercial clients – represented by DOES 3 through 10 – were specifically aware they were being given preferential treatment under the PPP.

97. Such discriminatory treatment among its clients, despite the fact the CARES Act and the PPP did not authorize such disparate treatment, constitutes

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

21
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 97 cont'd)

blatant anti-competitive and conspiratorial conduct. Far worse, each application Chase Bank fast-tracked over its retail clients that involved a private banking/commercial client that didn't objectively "need" a loan under the PPP may constitute mail or wire fraud in contravention of 18 U.S.C. §§ 1341, et seq. (if transmissions were made).

98. On the other hand, if Chase Bank approved loans under the PPP as a preferred lender, and those loan approvals went to private banking/commercial clients that didn't "need" such loans under an objective reading of the CARES Act, then Chase Bank may have very well committed fraud against the United States.

## CLASS ACTION ALLEGATIONS

99. The named Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein as class-related allegations.

100. In accordance with the Federal Rules of Civil Procedure, Rule 23(a) and (b), the named Plaintiffs, Legendary and Rō FITNESS, brings this action on behalf of themselves and as members of the Class as defined below.

101. For purposes of the FRCP, Rule 23(a), and Local Rules 23-2.1 through 2.2, Plaintiffs brings this action on behalf of themselves and as members of the

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

22
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 101 cont'd)

Class consisting of the following three sub-classes (per FRCP, Rule 23(c)(5)):

a.  From February 15, 2020 to April 17, 2020, (i) all retail clients of Chase Bank who could have qualified for a loan under the PPP and (ii) who received the series of form emails from Chase Bank as attached to this Complaint and (iii) whose applications were not funded by Chase Bank because of (iv) the delay and confusion created by the transmission and receipt of those emails (v) as measured against those of Chase Bank's private banking/commercial clients that (vi) were approved for a loan under the PPP during this same time-period;

b.  From February 15, 2020 to April 17, 2020, (i) all retail clients of Chase Bank who applied for a loan under the PPP and (ii) who would have otherwise met the requirements necessary to receive a loan under the PPP from Chase Bank but (iii) whose applications were not funded by Chase Bank because of (iv) Chase Bank's preferential processing of certain loan applications over other loan applications; and

c.  From February 15, 2020 to June 30, 2020, (i) all retail clients of Chase Bank who received the emails identified in this Complaint that (ii) relied on the representations contained in those same emails to the extent they

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

23
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 101(c) cont'd)

(iii) failed to timely pursue a loan under the PPP with any other SBA-approved lender and, (iv) as a result of Chase Bank's representations contained in those same emails, (v) ultimately failed to receive a loan approval under the PPP from Chase Bank.

102. For purposes of FRCP, Rule 23(a)(1), and Local Rule 23-2.2, this Class is so numerous that joinder of all members is impractical. The Class consists of small businesses that are business clients of the largest banking institutions in the country. It is presumed a majority of Chase Bank's "small business"-retail clients would have made an inquiry and application under the PPP with them, as it was a widely-known lifeline created by the CARES Act. Since the majority of SBA-approved lenders limited applications to their own existing clientele, particularly the *Big Four* (Chase Bank; CitiBank; Wells Fargo; Bank of America), it's further presumed the majority of Chase Bank's "small business"-clients would generally not have been able to apply for a loan under the PPP with any other major lending institution but Chase Bank.

103. For purposes of FRCP, Rule 23(a)(2), and Local Rule 23-2.2, there are questions of law and fact almost entirely common to this Class. These common questions include, but are not limited to:

a. Whether each and every retail-client of Chase Bank was sent and received the emails described herein;

b. Whether each and every private banking/commercial client of Chase Bank received the same emails (or other/different emails);

c. Whether transmission and receipt of those emails contributed to a material delay in Chase Bank's retail clients from seeking loans elsewhere;

d. Whether the language included in the Defendants inquiry portal – as found at Exhibit 4 – is binding on each of its retail clients as it relates to the causes set forth in this action;

e. Whether the language included in the Defendants inquiry portal – as found at Exhibit 4 – constitutes bad-faith and oppressive conduct, or is otherwise void as against public policy;

f. Whether Chase Bank gave preferential treatment to some business clients over others;

g. Whether Chase Bank was in prior communication with those of its business clients that did receive preferential treatment;

h. Whether Chase Bank purposely delayed its retail clients from applying for a loan under the PPP in light of its preferential treatment to its private banking/commercial-clients;

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

25
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

i.  Whether Chase Bank purposely failed to fulfill its own assurances to its retail clients as reflected in Exhibit 3;

j.  If Chase Bank did purposely fail to fulfill its own assurances, an examination as to why;

k.  What order Chase Bank processed the applications it actually received from its retail clients;

l.  Whether Chase Bank was in contact with any other major lending institution with respect to the preferential treatment described herein;

m. Whether, as part of any communication Chase Bank was engaged in with these other major lenders, an accord, agreement, or plan was struck to limit applications under the PPP to existing customers only;

n.  Whether Chase Bank approved some loan applications under the PPP as a "preferred lender" (as contemplated by the Small Business Act);

o.  Which loan applications were approved for a loan under the PPP under Chase Bank's preferred-lender authority, and which of those were sent to the SBA for approval;

p.  Whether the causes set forth in this action can be stated against the Defendants by these Plaintiffs and Class as based on the facts alleged in this pleading.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

26
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

104. For purposes of FRCP, Rule 23(a)(3), and Local Rule 23-2.2, the claims of the Plaintiffs, which arise out of the Defendants' acts and omission as described herein, are almost universally typical of the claims of the Class members. Likewise, defenses to the Plaintiffs' claims – consisting of both legal and factual defenses – are also typical of the defenses to the claims of the Class.

105. For purposes of FRCP, Rule 23(a)(4), and Local Rule 23-2.2, Legendary and Rō FITNESS will fairly and adequately represent and protect the interests of the Class. Legendary, as represented by Ms. Kszos, is articulate and knowledgeable about its claims, and is fully able to describe and appreciate them – particularly as they relate to Legendary's inability to actually submit an application with Chase Bank as a result of the contradictory/delayed information it received as reflected in this pleading's exhibits. Rō FITNESS, as represented by Ms. Moore, is also articulate and knowledgeable about its claims, and is fully able to describe and appreciate them. Rō FITNESS represents the other side of the coin – those businesses that were delayed in submitting their application, but did in fact get an application submitted to Chase Bank and were otherwise unfunded under the PPP.

106. There are no conflicts of interest between the Plaintiffs and the interests of the Class, and the loss suffered or about to be suffered by the Plaintiffs is

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

27
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 106 cont'd)

substantially similar to the loss suffered or about to be suffered by the class [as a result of Chase Bank's acts/omissions, in particular]. The declaratory and injunctive relief sought by the Plaintiffs will, similarly, be consistent with the relief each member of the Class could, would, and should be entitled to.

107. Counsel for Plaintiffs is competent and suited to represent its interest and the interests of the Class at large. While a smaller practice in general, counsel for the Plaintiffs, Adam Dolce, has been practicing law for over ten years. He has state bar licenses in CA, NY, and IN, and is admitted to practice law before several federal districts as well (IN, CA, CO). Counsel has prosecuted several complex litigation-matters, including legal and medical malpractice-actions, and is sufficiently familiar with declaratory and injunctive relief. This will be the second class action he has filed in his career, and first involving the federal anti-trust laws. The only conflict counsel is aware of is that he is, like many persons in the country, a banking client of Chase Bank. To the extent he applied for relief under the PPP, he will waive his interest as a potential class member.

108. For purposes of FRCP, Rule 23(b)(1), this class action is favored and appropriate since separate actions would create a risk of inconsistent or

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

28
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 108 cont'd)

varying adjudications with respect to individual class members in individual states. Moreover, prosecuting separate actions would also create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

109. This class action is also favored under Rule 23(b)(2) to the extent the Defendants have acted, as described herein, on grounds that apply generally to the class such that injunctive and declaratory relief is appropriate for the Class as a whole.

110. Finally, this class action is also favored under Rule 23(b)(3) to the extent questions of law and fact are common to the Class and predominate over any questions that may affect individual members of the same. A class action is simply superior to any other available methods for fair and efficient adjudication, as it will facilitate the resolution of the broadest number of claims in the most efficient forum available. Any difficulties arising under, or inherent to this action, will be insubstantial compared to alternative methods of individualized litigation.

**Similar Litigation**

111. The Plaintiffs are aware of several class actions that are now arising under the major lenders processing of loan applications under the PPP. First, Plaintiffs are aware of Profiles, Inc. v. Bank of America Corp., et al, Case No. 1:20-cv-008940SAG filed on April 3, 2020 in the District Court of Maryland (Northern). This is an action alleging implied causes of action under the CARES Act and Small Business Act.

112. In addition, Plaintiffs are aware of four other class action lawsuits filed in this Court alleging state-based unfair/fraudulent competition-causes of action (e.g., Case No. 20-3590, Law Office of Irina Sarkisyan v. U.S. BANCORP, filed on April 19, 2020 in this District [1 of 4 such actions filed by Ms. Sarkisyan]).

113. Plaintiffs are not aware of any lawsuits filed or pending that involve, aside from Plaintiffs' request for injunctive/declaratory relief, those causes of action set forth herein.

**Chase Bank's Market Power**

114. For purposes to follow, Plaintiffs hereby identify and allege Chase Bank's market power in the following respects:

    a.  Chase Bank has significant market power as it relates to the banking and financial sector in general, particularly in the United States. By

(¶ 114(a) cont'd)

market capitalization, it is the country and world's most valuable bank. It operates more than 5,000 separate locations, with over 1000 locations in California alone.

b. With respect to the PPP, Chase Bank has now disbursed more loans than any other SBA-approved lender (approximately $14 Billion of $36 Billion sought by its clients).

c. Relative to the PPP, and because nearly all major lenders were fielding applications from their existing customers only, the Plaintiffs allege Chase Bank held general monopoly power over its clients' *access* to a loan under the PPP.

115. The same market power contemplated by ¶ 114(c) is applicable to nearly all SBA-lenders that fielded applications under the PPP. Because most of them limited applications to their existing customers only, each such lender exercised general monopoly power relative to their own clients' access to the PPP.

## FIRST CAUSE OF ACTION
## (SHERMAN ACT (15 U.S.C. § 1) – ALL DEFENDANTS)

116. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their cause of action.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

31
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

117. On or shortly before March 31, 2020, nearly every major, nationwide lender – consisting of, but not limited to, Chase Bank, Wells Fargo, Bank of America, and Citibank – made the decision to limit loan applications under the PPP to existing customers only.

118. As the *New York Times* reported, in the article cited hereinabove, each major lender had two levels of customers: wealthy and preferred customers, or private banking/commercial clients; and their retail small business client.

119. Each of these major, nationwide banks are "preferred lenders" under the Small Business Act. That means they had "complete authority" to process and approve loans under the PPP subject to their business discretion.

120. Though it is now known nearly 5,000 SBA-approved lenders made loans under the PPP, a majority of these lenders had similar restrictions in place limiting applications to their own existing customers.

**Horizontal Market Allocation: Chase Bank w/ Other Lenders**

121. Of the major banks, however, including Chase Bank, such policies amount to – and suggest an agreement in service to – horizontal market and/or customer allocation.

122. These restrictions evidence a policy contrary to each major lender's interest – particularly nationwide, SBA-preferred lenders that had the power to make loan decisions without any delay incurred through and from the SBA itself.

123. Plaintiffs allege the $349 Billion earmarked under the CARES Act for purposes of the PPP, fully backed and guaranteed by the SBA/Federal Government at no financial risk to the lender itself, represents an "over-supply" of available credit to small businesses nationwide.

124. Yet this same "over-supply," and by virtue of most SBA-approved lenders limiting applications under the PPP to their existing customers in the context of a first-come/first-served distribution, also inexplicably constitutes a "scarce resource."

125. In a competitive market, and as a preferred SBA-lender, Chase Bank's actions in limiting applications to its existing customers only – combined with the same limitation enacted by each of its major competitors – is therefore contrary to its/their economic interests.

126. In this context, the Plaintiffs allege and plead circumstantial evidence of a traditional conspiracy among those lenders that limited applications under the PPP to their existing customers – particularly the major lenders with sizable market power, a broad customer base, and preferred lending status with the SBA (which includes Chase Bank).

127. In short, each major lender had every incentive and means to process and approve applications under the PPP as quickly as possible, and to expand processing and approval to as many customers as possible.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

33
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

128. Each lender could have prioritized their existing customers to this end, but to completely exclude new customers altogether evinces a ratified plan not to compete with one another's existing client base.

129. Such market or customer allocation constitutes an unreasonable "restraint of trade or commerce" within the meaning of the Sherman Act.

130. The submission and approval of loans under the PPP is "trade" or "commerce" as that phrase is defined and understood for purposes of the Sherman Act.

131. By announcing they would limit applications under the PPP exclusively to their own market base, then, each of these major banks, but particularly Chase Bank, participated in a *per se*-violation of the Sherman Antitrust Act (Section 1) (*see also* <u>Palmer v. BRG Georgia, Inc</u>. (1990), 498 U.S. 46).

132. Such limitations had and continue to have an effect on interstate commerce. In fact, given the effect the PPP was supposed to have on small businesses across the country, such limitations go to the very heart of interstate commerce.

133. As a consequence of this market allocation, the Plaintiffs, for themselves and for those members of the Class, were directly affected. On one hand, Legendary could not timely submit an application with Chase Bank or any other major lender during the time where she would have had the best chance

(¶ 133 cont'd)

of qualifying for a loan under the PPP. On the other, Rō FITNESS was able to eventually submit an application, but only after Chase Bank processed its preferred customers, first, as part of its more acute customer allocation.

134. The lack of approval for a loan under the PPP, for the Plaintiffs and for the Class in general, was caused, partly or in full, by Chase Bank's *per se* violation of 15 U.S.C. § 1 in concert with the other major lenders.

**Conspiracy to Restrain Trade: Chase Defendants and Does 3 through 10**

135. In addition to its general plan enacted between most SBA-approved lenders, Chase Bank engaged in a further conspiracy to restrain trade with its own private banking/commercial clients as represented by DOES 3 through 10.

136. Every conspiracy affecting interstate commerce which imposes an unreasonable restraint on trade is illegal under 15 U.S.C. § 1.

137. Chase Bank's processing of 8,500 preferred, private banking/commercial-clients over its retail clients constitutes an unreasonable restraint on Chase Bank's retail clients' access to loans under the PPP (the relevant market).

138. DOES 3 through 10 knew, or should have known, their preferred application status would have been in restraint to other business's access and application for the same loan amounts. Under the SBA's rule regarding first come/first served-access, such a restraint is in all manners unreasonable.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

35
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

139. In context, this produced a substantial anticompetitive effect among Chase Bank's retail clients as a whole. The Plaintiffs, for themselves, and as members of the Class, were specifically harmed based on this anticompetitive and exclusionary conduct.

140. Pointedly, the Plaintiffs raise the following question as an allegation: if even one business out of the 8,500 preferred clients received a loan under the PPP that it didn't objectively need, wouldn't that itself be an unreasonable restraint on those clients that did actually need a loan?

141. Plaintiffs therefore seek all available relief available to them and the Class under the Sherman Act, § 1, and as is contemplated by the Clayton Act, 15 U.S.C. § 15.

## SECOND CAUSE OF ACTION
### (SHERMAN ACT (15 U.S.C. § 2) – ALL DEFENDANTS)

142. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their second cause of action.

143. Chase Bank has significant market power in the lending and financial services industry. With respect to the market created by the CARES Act and the PPP, and relative to their small business applicants, Chase Bank retained near 100% market power and control.

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

36
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

144. This market power and control is even more pronounced by Chase Bank's preferred lender status with the SBA.

145. The submission and approval of loans under the PPP is "trade" or "commerce" as that phrase is defined and understood for purposes of the Sherman Act.

146. Chase Bank's decisions to limit its application to existing customers, combined with its decisions to prioritize its private banking/commercial clients over its retail clients, constitutes monopolization in contravention of 15 U.S.C. § 2.

147. Such acts were in service to Chase Bank's monopoly power and/or its maintenance of its monopoly power through willful acquisition.

148. Plaintiffs further allege Chase Bank's maintenance of its monopoly power, by approving near 100% of its private banking/commercial clients as compared to 4% of its retail clients, does not reflect growth or development due to a superior product, business acumen, or historic accident. If anything, and given the purpose behind the PPP, and the plain language of the CARES ACT, such maintenance and preferred approval constitutes "attempted monopolization" within the meaning of 15 U.S.C. § 2 as well.

149. In short, Chase Bank engaged in anticompetitive conduct by giving 8,500 of its private banking/commercial clients unfettered and expedited access to

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

37
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 149 cont'd)

loan approval under the PPP while delaying and otherwise limiting 96% of its retail clients' access to the same.

150. Based on the *New York Times* article discussed hereinabove, Chase Bank held a specific intent to monopolize in the context of the PPP – or, more specifically, to backseat its retail clients in favor of its preferred clients.

151. This intent is further evidenced by Chase Bank's financial motivation for doing so: in addition to pre-existing debt considerations (that Chase Bank likely wanted to ensure would survive COVID-19), Chase Bank was paid higher origination fees for purposes of loans given to larger business/preferred clients (for instance, and before it gave back its loans, Ruth Hospitality Groups' $20m loan would have netted Chase Bank $200,000 in lender fees from the SBA; a small business receiving a loan of, say, $100,000, would have only netted Chase Bank $5,000 in origination fees).

152. Expanded out, Chase Bank's total loans made under the PPP (initial funding) netted it over $100 Million in lender fees alone.

153. Worse, Chase Bank not only succeeded in monopolizing access to the PPP to its preferred clients, but as a consequence of such success, and because other major lenders did the exact same thing, Congress passed an additional

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

38
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 153 cont'd)

spending bill to ensure more loans went to more small businesses.

154. This is, in essence, the perfect situation for an SBA-approved lender like Chase Bank (as there is no meaningful financial risk). The lenders approve loans to those entities they prefer (without any competition whatsoever from each other); they get paid substantial lender fees from the SBA; and the loans themselves are fully guaranteed by the United States.

155. In addition, and based on the allegations as previously discussed in full, DOES 3 through 10, together with the Chase Defendants, conspired together for purposes of Chase Bank's monopolization/attempted monopolization.

156. Though DOES 3 through 10 do not contemplate the entirety of the 8,500 preferred clients that Chase Bank processed, it does represent those entities that would have known they were assisting Chase Bank in prioritizing loans under the PPP despite the SBA's guidelines that such loans were to be funded "first come/first served."

157. Plaintiff therefore seeks all available relief available to it and the Class under the Sherman Act, § 2, and as is contemplated by the Clayton Act, 15 U.S.C. § 15.

///

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

# THIRD CAUSE OF ACTION
## (CLAYTON ACT (15 U.S.C. § 15)– ALL DEFENDANTS)

158. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their third cause of action.

159. The conduct committed by the Defendants harmed the Plaintiffs, themselves and as members of the Class, in ways that are forbidden by the antitrust laws. If even one business was unreasonably passed-over for a loan under the PPP in favor of another business, such acts would constitute anti-competitive conduct prohibited by the antitrust laws of the United States.

160. Such conduct would be a violation of 15 U.S.C. § 15, and Plaintiffs, on behalf of themselves and the Class, seeks all available relief available under the same section.

161. As is specific to Legendary, and as is likely an impact on the Class in general, Legendary was given conflicting information preventing her from providing a timely application to Chase Bank under the PPP.

162. As is specific to Rō FITNESS, and as is likely an impact on the Class in general, Rō FITNESS was given conflicting information preventing her from providing a timely application to Chase Bank under the PPP. However, Rō FITNESS was able to eventually submit an application to the same. That application has not been timely processed or approved.

163. As a result, Plaintiffs, for themselves and as members of the Class, are and will be injured in their business by virtue of the Defendants violation of the antitrust laws.

164. If Congress earmarks additional funds to the PPP, and SBA-approved lenders are authorized to re-open their application systems (or to continue processing existing applications), Legendary and the Class in general may be further harmed if the conduct described herein is not enjoined or otherwise addressed.

## FOURTH CAUSE OF ACTION
### (NEGLIGENCE – CHASE DEFENDANTS ONLY)

165. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their fourth cause of action.

166. Chase Bank's emails, together with the CARES Act (specifically, the sections detailing the PPP), as well as the guidelines and rules implemented by the Treasury Department and SBA, constitute the standard-of-care applicable to the processing of loans submitted to Chase Bank for approval under the PPP.

167. Chase Bank had a duty-of-care to the Plaintiffs and the Class by virtue of its own emails and assurances, as well under the plain language, spirit, and

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

41
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 167 cont'd)

purpose of the CARES Act's PPP. It cannot be understated that timing was everything with respect to the PPP (first-come/first-served).

168. Chase Bank breached this duty in the following ways (which are not exclusive):

    a.  It failed to timely announce to Plaintiffs and the Class when it was accepting queries for applications despite assuring the same Class it would do so;

    b.  It failed to timely announce to Plaintiffs and the Class when it was accepting applications despite assuring the same Class it would do so;

    c.  It failed to make the query/application-process "as easy as possible" despite its assurance otherwise;

    d.  It prioritized certain applications over others;

    e.  It specifically required that applicants, believed to be retail clients only, not contact it by phone or in-person, requiring instead that their applications be submitted through the online platform; and

    f.  It created a platform that was incapable of timely accommodating the applications that were submitted;

169. As a result of its assorted breaches and contradictory instructions, Plaintiffs and the Class were harmed in an amount to be determined at trial.

170. The measure of that harm, however, *will generally begin* with a calculation as to 1. When Chase Bank received applications under the PPP (from the Class *and* Chase Bank's preferred clients); 2. Which of those applications met all of the SBA/PPP-requirements; 3. Which of those applications were actually approved and funded (the Class and its preferred clients); as compared, from a calendar and timing-reference, 4. To those of the Class that were denied or otherwise not funded.

## **FIFTH CAUSE OF ACTION**
### **(INTENTIONAL MISREP. – CHASE DEFENDANTS ONLY)**

171. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their fifth cause of action.

172. The collection of emails Chase Bank issued to its small business-clients, which went to most if not all of the Class, are now provably false.

173. As evidenced by Exhibit 3, Chase Bank made specific representations that they represented as true: namely, that they would timely announce the application process through three separate channels (email; twitter; and live on their website).

174. As evidenced by Exhibit 4, Chase Bank further represented it would take certain steps to those members of the Class that had the wherewithal to

(¶ 174 cont'd)

submit an inquiry.

175. These combined representations were not true. Chase Bank did not timely inform by email or twitter that it had opened an inquiry-process, or that applications were being accepted. They limited the ability of the Class to submit applications or inquiries via online only, rendering any kind of feedback an impossibility as well. Chase Bank added to this confusion by representing no questions could be answered by branch personnel or call center employees.

176. Chase Bank either knew that their representations were false – made in order to accommodate the concierge service they were giving their private banking/commercial clients, for instance – or they made their representations recklessly and without regard for the truth.

177. Chase Bank intended that the Plaintiffs, and by extension the Class, rely on these representations in order to grant Chase Bank additional time to get their preferred clients-applications approved.

178. Plaintiffs, and by extension the Class, reasonably relied on Chase Bank's representations by waiting for emails that never came. As a result, Plaintiffs and the Class were harmed based on the delay created by Chase Bank's misrepresentations. With a first come/first-served policy, Chase Bank's

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

44
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 178 cont'd)

representations had the effect of simply delaying their own retail clients'

ability to get a loan that would assist their businesses for purposes of

economic survival.

179. It remains to be seen how many businesses in the Class will fail as a result of

Chase Bank's misrepresentations and delays. The Plaintiffs themselves are

on the border of shuttering due to lack of loan approval under the PPP.

## SIXTH CAUSE OF ACTION
## (NEGLIGENT MISREP. – CHASE DEFENDANTS ONLY)

180. Plaintiffs hereby incorporate by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein for their

sixth cause of action.

181. As an alternative to their fifth cause of action, the Plaintiffs allege it's

theoretically possibly Chase Bank honestly believed in the representations it

made to the Plaintiffs and the Class. Perhaps it did believe it would make

timely announcements via email and/or twitter, or that it would make loan

processing as fast and as easy as possible.

182. However, and based on its conduct with respect to its preferred clients, Chase

Bank had no reasonable grounds for believing in the representations it was

making to its retail clients.

183. As a result, Plaintiffs and the Class were harmed based on the delay created by Chase Bank's misrepresentations. With a first come/first-served policy, Chase Bank's representations had the effect of simply delaying their own retail clients' ability to get a loan that would assist their businesses for purposes of economic survival.

## SEVENTH CAUSE OF ACTION
### (DECLARATORY RELIEF – CHASE DEFENDANTS ONLY)

184. Plaintiffs hereby incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein for their seventh cause of action.

185. There is now an actual controversy between the Chase Defendants and the Class concerning the language provided within Exhibit 4.

186. In short, was it proper of Chase Bank – in light of the circumstances behind the passing of the CARES Act, the limitations imposed by lenders while implementing the PPP (excluding outside applicants, for example), and the economic uncertainty crippling the entire nation – to condition a small business's query and/or application under the PPP upon a release and waiver of liability hastily tucked in to their online portal?

187. Plaintiffs, for themselves and for the Class, and pursuant to 28 U.S.C. § 2201, requests a declaration such a release and waiver is void as against public

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

46
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 187 cont'd)

policy, fails for lack of legitimate consideration, and further constitutes bad

faith and oppressive conduct by Chase Bank.

## EIGHTH CAUSE OF ACTION
### (INJUNCTIVE RELIEF – ALL DEFENDANTS)

188. Plaintiffs hereby incorporate by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein for their

eighth cause of action.

189. Under 15 U.S.C. § 26, injunctive relief is proper in order to prevent

threatened loss or damage as a result of the Defendants violation of the

antitrust laws.

190. On behalf of the Class, Legendary seeks a preliminary and permanent

injunction prohibiting any future violations of the antitrust laws. Specifically,

the named Defendants should be enjoined from accepting applications under

the PPP from their existing customers only (a requirement not in the CARES

Act or SBA's Interim Final Rule), and Chase Bank should be particularly

enjoined from preferring certain business clients over others outside of the

requirements of the PPP and the Treasury Guidelines.

191. Because any injunctive relief will merely open the Class, and public at large,

to more options for purpose of applying for loans under the PPP, Legendary

would request the bond requirement of 15 U.S.C. § 26 be waived or

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

47
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

(¶ 191 cont'd)

otherwise set at a nominal amount. There can be no reasonable ground that

any injunction granted by the Court may result in harm to any of the

defendants as it would merely enforce the spirit and purpose of the CARES

Act and avail more small businesses to that spirit and purpose.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS, ON BEHALF THEMSELVES AND FOR THE CLASS, PRAYS OF THIS COURT TO DO THE FOLLOWING:

1.  Certify this action as a class action, pursuant to the Federal Rules of Civil Procedure, Rule 23, designating the named Plaintiffs as Class Representatives, and counsel for the named Plaintiffs as Class Counsel;

2.  Preliminarily and permanently enjoin the named Defendants from engaging in conduct contrary to the antitrust laws of the United States;

3.  Declare the rights of the named Plaintiffs and Class in general with respect to Exhibit 4 herein;

4.  Declare the acts of the Defendants to be illegal within the mean of 15 U.S.C. §§ 1, 15;

5.  Award damages – compensatory, exemplary, statutory (trebled) – to the named Plaintiffs and the Class in an amount to be determined at trial;

6.  Award pre-judgment and post-judgment interest at the rate provided by law;

7.  Award costs of suit, including attorney fees as required by law; and

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

48
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.

8.     For such other and further relief as the Court may deem just and proper.

Dated: 28 April 2020        Respectfully submitted by,

/s/ Adam D. Dolce

_____

**Adam D. Dolce, Esq.**
414 Yale Avenue, Suite B
Claremont CA 91711
Telephone: 909-542-9030
FAX: 909-992-3554
Email(s): adam@dolcelegal.com;
thenonprofitlawfirm@gmail.com;

Attorney for the Plaintiffs and Proposed Class

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to the Federal Rules of Civil Procedure, Rule 38, together with

3

4

Local Rule 38-1, Plaintiff hereby demands trial by jury of all claims so triable.

5

Dated: 28 April 2020           Respectfully submitted by,

6

7

/s/ Adam D. Dolce

8

_____

 **Adam D. Dolce, Esq.**

9

414 Yale Avenue, Suite B

10

Claremont CA 91711

Telephone: 909-542-9030

11

FAX: 909-992-3554

12

Email(s): adam@dolcelegal.com;

thenonprofitlawfirm@gmail.com;

13

14

Attorney for the Plaintiffs and Proposed

Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF
ADAM DOLCE
ATTORNEY AT LAW

50
CLASS ACTION COMPLAINT (FIRST AMENDED)
LEGENDARY TRANSPORT, LLC, et al. v. JPMORGAN CHASE, et al.